*Cipciao, LLC v. M Chow One, LLC*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of October, two thousand twenty-one.

PRESENT:

> JOHN M. WALKER, JR.,
> ROBERT D. SACK,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

_____

CIPCIAO, LLC,

> *Plaintiff-Appellant,*

> v.                                        No. 21-929

M CHOW ONE, LLC, MICHAEL CHOW,

> *Defendants-Appellees.*

_____

FOR APPELLANT:                   STEPHEN B. MEISTER, Meister Seelig & Fein LLP, New York, NY.

FOR APPELLEES:                   PETER J.W. SHERWIN (Lee Popkin, Shiloh Rainwater, *on the brief*), Proskauer Rose LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Furman, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment entered on March 25, 2021, is **AFFIRMED**.

Cipciao, LLC, appeals from the district court's order dismissing its complaint under Federal Rule of Civil Procedure 12(b)(6). In its complaint, Cipciao alleges state law claims for breach of contract against M Chow One, LLC ("MCO"), the owner of a chain of upscale restaurants, as well as various related claims against MCO and its principal, Michael Chow. In January 2020, Cipciao and MCO entered into a written agreement (the Membership Interest Purchase Agreement, or "MIPA") under which Cipciao, a restaurant acquisition enterprise, would purchase a 90% interest in MCO's "Mr. Chow" restaurant chain and certain related licensing rights for $68 million. Upon execution of the MIPA, Cipciao made a "good faith non-refundable payment" (the "Initial Payment") to MCO in two installments totaling $5 million. J.A. 97. Both parties exercised their respective rights to terminate the MIPA before the closing date. Cipciao then sued for return of the Initial Payment. The district court dismissed Cipciao's complaint for failure to state a claim, finding that the MIPA's relevant terms unambiguously entitled MCO to retain the Initial Payment. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, and refer to them only as necessary to explain our decision to affirm.

Cipciao acknowledges that Section 8.2(b) of the MIPA entitles it to recover the Initial Payment *if and only if* two conditions are met: (1) the restaurant lease consents (the "Consents") were not obtained by the closing date—a condition precedent to closing set by Section 7.2(b)—and (2) Cipciao terminated the MIPA under and in accordance with Section 8.1(c). *See Cipciao, LLC v. M Chow One, LLC*, No. 20-5982, 2021 WL 1141567, at *3 (S.D.N.Y. Mar. 24, 2021). The parties agree that MCO did not obtain the Consents by the closing date and that the Section 7.2(b) condition was not satisfied. This development gave Cipciao the right to terminate the MIPA and not proceed with the transaction.

Cipciao asserts, however, that the district court erred in concluding that Cipciao's termination was not made under Section 8.1(c)—the only termination that would entitle it to recover the Initial Payment. Cipciao first argues that the district court misinterpreted Section

8.1(c) to require an independent breach or failure by MCO giving rise to the failure of the Section 7.2(b) condition. Under Cipciao's interpretation, MCO's failure to obtain the Consents is enough to bring Cipciao's termination within Section 8.1(c). In the alternative, Cipciao submits that its complaint contains sufficient factual allegations of an independent breach or failure by MCO to sustain Cipciao's claim that it exercised its termination rights under Section 8.1(c).

## I. Section 8.1(c)

Section 8.1(c) describes the only method of termination under which Cipciao could recover the Initial Payment. It allows Cipciao to terminate the MIPA in the event of

> a breach, inaccuracy in or failure to perform any representation, warranty, covenant or agreement made by [MCO] pursuant to this Agreement that would give rise to the failure of any of the conditions set forth in Section 7.2, and such breach, inaccuracy or failure is incapable of being cured by [certain deadlines].

J.A. 122. In other words, a Section 8.1(c) termination requires that (1) MCO have committed a breach or failure to perform any covenant or agreement in the MIPA, *and* (2) such breach or failure to perform, in turn, gave rise to the failure of a Section 7.2 condition. Section 7.2(b) sets forth that Cipciao's obligation to consummate the MIPA transactions was subject to the satisfaction of the condition that "all Consents required under the Restaurant Leases . . . shall have been obtained." J.A. 120.

Cipciao argues that the failure of the Consent condition—and that failure alone, regardless of any related contractual obligation in MCO—is enough to permit Cipciao to terminate the contract under Section 8.1(c). We disagree. Cipciao's interpretation of Section 8.1(c)'s operation is circular: Cipciao asserts that MCO's failure to obtain the Consents "g[a]ve rise to the failure of" the Section 7.2(b) condition—that the Consents have been obtained. J.A. 122. Cipciao's interpretation would make redundant the two components of Section 8.1(c)—that there be a breach and that the breach give rise to the failure of a condition. Further, it would make all of Section 8.1(b) superfluous: a Section 8.1(b) termination right may be exercised where, as here, a party has simply failed to satisfy a

3

Section 7.2 condition, not by reason of any independent breach or failure to perform. If Section 8.1(c) required nothing more than the failure of a Section 7.2 condition, as Cipciao contends, then it would cover termination under the same conditions as Section 8.1(b). *See generally Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 124 (2d Cir. 2003) ("[U]nder New York law an interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." (internal quotation marks and alteration omitted)).

Cipciao offers no persuasive rebuttal to this point. Indeed, its briefing contains no discussion of the import of Section 8.1(b). Instead, it advances the sweeping additional argument that the reading of Section 8.1(c) adopted by the district court, and with which we agree, is "absurd and commercially unreasonable" because procuring the Consents was an "express condition precedent" to closing. Appellant's Br. at 34. According to Cipciao, our interpretation "gives no effect to Section 7.2(b)." *Id.* at 35. This contention is easily rebuffed: as a result of the failure of a Section 7.2 condition, Cipciao—while losing its $5 million Initial Payment, it is true—could decline to go forward with the whole $68 million transaction and terminate the MIPA under Section 8.1(b). As the district court aptly noted, "there is nothing commercially absurd or unreasonable about a contract that provides for a non-refundable deposit amounting to a fraction of the total value of a transaction negotiated by sophisticated, commercial entities—let alone sufficiently absurd to justify disregarding the plain meaning of the parties' written agreement under New York law." *Cipciao*, 2021 WL 1141567, at *4.

## II. The sufficiency of the complaint's other allegations

As described above, to effect a termination under Section 8.1(c), Cipciao must plausibly allege that MCO committed an independent breach or failed to perform an agreement that "gave rise to" the failure of the Consent condition. Cipciao argues that the complaint contains sufficient allegations to support a claim that MCO did so. In support, it points to MCO's obligations under both Sections 6.1 and 4.12(b) of the MIPA.

As an initial matter, MCO and Chow submit that Cipciao has waived any such contention because Cipciao explicitly argued before the district that MCO did not breach the MIPA other than by its failure to return the Initial Payment. Cipciao calls this is a mischaracterization and counters that it conceded only that MCO's failure to obtain the Consents was not itself necessarily a breach of the MIPA. We need not resolve the waiver dispute because we decide, in any event, that Cipciao has not adequately alleged an independent breach under either Section 6.1 or Section 4.12(b).

**A. Section 6.1**

Section 6.1 requires that each party "use its reasonable best efforts to obtain, at the earliest practicable date, all Consents necessary in connection with the consummation of the transactions contemplated under this Agreement." J.A. 112. Thus, for a breach under this section to provide a foundation for a Section 8.1(c) termination, Cipciao must plausibly allege that MCO failed to make its "reasonable best efforts" to obtain the Consents. Cipciao has failed to do so.

At the threshold, we note that the complaint makes no reference to Section 6.1. In contending nonetheless that its complaint contains plausible allegations of a Section 6.1 breach, Cipciao points to several paragraphs of its complaint. But the factual allegations in these paragraphs are wholly insufficient. Their thrust is either that MCO failed to obtain the Consents or, conclusorily, that MCO "breached the MIPA." J.A. 21, 28.

The complaint goes beyond those two assertions only in paragraphs 30 and 31, which state in full:

> 30. Plaintiff attempted diligently to assist MCO in securing the requisite Consents.
>
> 31. Nevertheless, some of Mr. Chow's landlords responded in writing to MCO's request for the Consents by demanding conditions to the Consents that were not permitted under the MIPA. On certain other leases, Plaintiff was aware of no communication or progress whatsoever to obtain the requisite Consents.

5

J.A. 21. As is evident, paragraph 30 is conclusory, and, in any event, whether or not Cipciao attempted to assist MCO in securing the Consents has no bearing on whether MCO made its "reasonable best efforts" to do so.

As to paragraph 31, Cipciao submits that its own lack of knowledge regarding MCO's efforts and communications somehow gives rise to a "reasonable inference" that MCO did not, in fact, make its "reasonable best efforts" but instead "abandoned its efforts" after being faced with resistance from one or more landlords. Appellant's Br. at 41. We are not persuaded that this lack of knowledge is enough to sustain Cipciao's allegations of breach. What Cipciao "was aware of" is of no bearing here; rather, we look to whether Cipciao has stated sufficient factual allegations to make a plausible claim that MCO committed a relevant breach. In evaluating whether the pleadings satisfy the plausibility standard, the Court must make reasonable inferences favorable to the plaintiff—not make unsupported assumptions based on the plaintiff's lack of knowledge, as Cipciao in effect now proposes.

Accordingly, we conclude that Cipciao has failed to make any plausible allegation that MCO violated Section 6.1.

**B. Section 4.12(b)**

Cipciao further submits that it has sufficiently alleged that MCO breached Section 4.12(b), although the complaint does not even hint at any allegation of a breach under that section. Section 4.12(b) contains MCO's representation that, to its knowledge, certain of its real estate leases "are in full force and effect." J.A. 106.

Cipciao first raised this argument in the district court in the form of a surreply request letter filed more than three months after briefing on the motion to dismiss concluded. The district court considered the argument "forfeited," *Cipciao*, 2021 WL 1141567, at *5, and MCO argues that Cipciao is precluded from raising it on appeal. We have considerable "discretion to decide the merits of a forfeited claim" where the issue is "purely legal," but we may decline to do so where, as here, "there is no justification for the failure to pursue it" earlier. *Patterson v. Balsamico*, 440 F.3d 104, 112–13 (2d Cir. 2006). Because Cipciao has provided no such justification, we decline to consider this forfeited argument.

Accordingly, notwithstanding MCO's failure to satisfy a condition set forth in Section 7.2 (i.e., failure to obtain the lease consents), Cipciao does not plausibly allege that any independent breach or failure to perform by MCO *gave rise to* such failure of the condition.

\* \* \*

In sum, Cipciao did not terminate the MIPA under Section 8.1(c). Instead, under the unambiguous terms of the MIPA, Cipciao exercised the termination rights that it had under Section 8.1(b). Accordingly, Cipciao is not entitled to recover the Initial Payment under Section 8.2(b), and Cipciao has failed to state a claim for breach of contract against MCO for its failure to repay it.

As Cipciao acknowledges, its remaining claims (for unjust enrichment, constructive trust, fraudulent conveyance, and others) turn on a determination that it is entitled to the return of its initial payment under the MIPA. The complaint therefore fails to state any claim on which relief can be granted.

We have considered Cipciao's remaining arguments and find in them no basis for reversal. The judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court